IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TYLER SHUMAKE,

    Plaintiff,

v.                                                  Case No. 1:22-cv-00893-MLG-LF

BERNALILLO COUNTY BOARD OF
COUNTY COMMISSIONERS,

    Defendants.

**ORDER OF DISMISSAL**

This matter is before the Court on Tyler Shumake's pro se Civil Complaint, filed in the Second Judicial District Court, Bernalillo County, State of New Mexico, on October 12, 2022, and removed to this Court by Defendant on November 22, 2022. Doc. 1-1. Plaintiff is a pretrial detainee incarcerated in the Bernalillo County Metropolitan Detention Center ("MDC"). Plaintiff claims that the conditions of confinement at MDC violate his rights guaranteed by the Sixth Eighth and Fourteenth Amendments to the United States Constitution. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court finds that the Complaint must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend. Defendant's Motion to Dismiss (Doc. 5), to which Plaintiff did not reply, shall be denied without prejudice as moot.

**I.    Background**

For the limited purpose of this Order, the Court assumes that the following facts taken from the allegations in the Complaint are true.

1

Plaintiff alleges that cyberhackers attacked Bernalillo County databases, internet connections, and MDC's electronic security systems in January 2022, which compromised state prosecutors' ability to pursue convictions against the pretrial detainees held at MDC. Doc. 1-1 at 1. It also affected MDC's automatic doors and security cameras. *Id*. Then, in June 2022, MDC chief Greg Richardson declared a state of emergency at MDC due to understaffing (allegedly a 51.09 % vacancy rate among correctional officers and "crucial" understaffing among the medical providers). *Id*. Plaintiff alleges that under these circumstances, corrections officers are authorized to use deadly force against the inmates, the Chief Public Defender instructed attorneys and staff to stop visiting clients at MDC in person, and MDC was "constantly locked down." *Id*. Plaintiff attributes the staffing issues to MDC Chief Richardson, whom, he alleges, created a toxic environment for MDC security and medical staff, causing them to quit their jobs. *Id.* at 2. He alleges, as well, that Richardson and the County Commissioners, along with Albuquerque's mayor, the Second Judicial District Court, the District Attorney's Office, and the Law Offices of the Public Defender share culpability for their collective failure to remedy what Plaintiff characterizes as MDC's humanitarian crisis. *Id*.

As to the effect of these conditions on him personally, Plaintiff alleges that three times in September 2022, he was locked down for five days at a time and on several other days in the same month, he only had half an hour outside of his cell. *Id.* In response to his written grievance about the excessive lockdowns "security" allegedly advised Plaintiff that they were trying to address the problem to keep the lockdowns at a minimum. *Id*.

Based on the foregoing, Plaintiff claims that his right to be free from cruel and unusual punishment were violated. *Id*. Since Plaintiff is a pretrial detainee, this claim arises under the due process clause of the Fourteenth Amendment. Plaintiff also refers to the constitutional guarantees

of equal protection, the right to a fair trial, and the right to counsel, though the claims are not clearly developed. *See id*.

Defendant filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on November 22, 2022. Doc. 5. Plaintiff did not respond.

## II.     Analysis

### A.     Standard of Review

As Plaintiff is proceeding pro se in this civil action against a governmental entity, the Complaint must be screened under 28 U.S.C. § 1915A. The Court must dismiss a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Among other things, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Because Plaintiff is pro se, the Court construes his pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of pro se pleadings). This means that "if the court can reasonably read the pleadings to state a valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading

requirements." *Id.* It does not mean, however, that the court should "assume the role of [his] advocate[.]" *Id.*

### B.     Pleading Standards Governing a § 1983 Claim

Plaintiff seeks to state claims under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. Section 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

A county may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). For § 1983 municipal-liability purposes, "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision" may be considered an "official policy or custom." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). But municipal liability is limited "to action for which the municipality is actually responsible," which is different from the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

Therefore, to state a claim against a county, a plaintiff must allege facts showing that an

official policy is the moving force behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a constitutional right] and (2) deliberate indifference." *Burke v. Regaldo*, 935 F.3d 960, 999 (10th Cir. 2019). The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

### C. Plaintiff May Not Represent the Interests of Others

In the Complaint, Plaintiff identifies numerous events and circumstances at MDC that he contends adversely affect the conditions there, generally—the alleged cyberattack and its concomitant effects on the jail's systems, understaffing, a toxic work environment for MDC staff, corrections officers' authority to use deadly force, the Public Defender's policy prohibiting in-person client visits, and constant lockdowns. Except for the lockdowns, however, Plaintiff does not allege facts showing whether, and if so how, these conditions resulted in a deprivation of his constitutional rights. To the extent Plaintiff seeks to pursue claims on behalf of other inmates or the former or current MDC staff, he is prohibited from doing so. *Beierle v. Colorado Dep't of Corr.*, 79 F. App'x 373, 375 (10th Cir. 2003) ("[A] litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Lyons v. Zavaras*, 308 F. App'x 252, 255 (10th Cir. 2009) (same).

### D. The Complaint Does Not State a Viable § 1983 Claim Against Defendant

1. <u>Cruel and Unusual Conditions of Confinement</u>

As the Court understands it, the crux of Plaintiff's Complaint is that Bernalillo County subjected him to cruel and unusual conditions of confinement in September 2022 when he was prohibited from leaving his cell for several days and, on several other days, was deprived of

adequate time outside his cell. For several reasons, the claim is not viable as pled.

First, Plaintiff's allegations do not demonstrate a violation of his constitutional right to be free from cruel and unusual punishment. The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Although pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment, the standards governing claims of cruel and unusual punishment are the same in either context. *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 F. App'x 554, 556 (10th Cir. 2001).

To demonstrate that prison conditions amount to cruel and unusual punishment, the plaintiff must prove, among other things, that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Through restrictive, the conditions Plaintiff complains of do not rise to that level. *See e.g.*, *Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008) (finding conditions such as "lock-down for 23 hours per day," and "limited ability to exercise outdoors" did not amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 755 (10th Cir. 2014) (finding no violation where plaintiff had only had 10 hours per week of recreation time);

*Smith v. Romer*, Case No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (finding no violation stemming from 23-hour lockdown, limited vocational, educational, and recreational services, and exercise of one hour per day in cell). The fact that the complained of lockdowns were caused by the unusual circumstances of a cyberattack affecting the security systems and understaffing and were limited to the month of September is also inconsistent with a viable constitutional claim. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." (internal quotation marks omitted)).

Even if the alleged lockdowns satisfied the foregoing standards, the claim would fail because Plaintiff has not alleged facts demonstrating the existence of a policy or custom that caused the lockdowns or deliberate indifference. Plaintiff's conclusory allegation that Richardson created a hostile work environment for employees is too vague and attenuated to demonstrate a causal relationship between the lockdowns and any policy or custom impliedly alleged. Further, Plaintiff's allegation that MDC's security officials' response to his grievance about the lockdowns indicated that the officials were working to remedy the problem contravenes a showing of deliberate indifference.

For the foregoing reasons, Plaintiff's due process/cruel and unusual punishment claim against the County will be dismissed without prejudice for failure to state a claim.

2. <u>Fair Trial and Equal Protection</u>

As to Plaintiff's references to equal protection, the right to a fair trial, and the right to counsel, the Complaint does not contain sufficient factual development to state discernable claims.

If Plaintiff wishes to state an equal protection claim, he must allege facts showing that prison officials treated him differently from similarly situated prisoners and that the disparate treatment was not reasonably related to penological interests. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019); *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). The Complaint contains no allegations of this nature.

The import of Plaintiff's references to a fair trial and counsel are not clear. To the extent the Complaint implies that the conditions at MDC are interfering with Plaintiff's Sixth Amendment rights to a fair trial and effective assistance of counsel on the charges upon which he is detained at MDC, he should raise these issues in his pending criminal case. *See Walk v. Edmonson*, 472 F.3d 1227, 1232 (10th Cir. 2007) ("Absent unusual circumstances, a federal court is not permitted to intervene in ongoing state criminal proceedings.") (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)). Otherwise, if Plaintiff wishes to pursue claims that the Court has not discerned, he should clarify and develop his theories in an amended complaint.

    3.  <u>Individuals and Entities Not Named as Defendants</u>

Plaintiff identifies numerous Richardson along with Albuquerque's mayor, the Second Judicial District Court, the District Attorney's Office, and the Law Offices of the Public Defender as allegedly culpable actors. These individuals and entities are not named as defendants. If Plaintiff intends to pursue claims against them, he must file an amended complaint adding the appropriate defendants and include specific allegations showing what each individual actor did in violation of Plaintiff's constitutional rights.

**III.**    **Plaintiff May File an Amended Complaint**

Generally, pro se plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to

amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

### IV.    The Motion to Dismiss Shall be Denied Without Prejudice

Because the claims in the Complaint are dismissed pursuant to the Court's screening function, the Motion to Dismiss shall be denied without prejudice as moot.

It is therefore ordered that:

(1)    Each of the claims set forth in the complaint (Doc. 1-1) are dismissed without prejudice.

(2)    Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Order.

(3)    The Motion to Dismiss (Doc. 5) is denied without prejudice as moot.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA